UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BRUCE A. MANDRELL,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

    Defendant.

Case No. 06-cv-612-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 31) of Magistrate Judge Donald G. Wilkerson recommending that the Court affirm the Commissioner's final decision denying plaintiff Bruce A. Mandrell's ("Mandrell") application for Social Security Disability Insurance and Supplemental Security Income. Mandrell has objected to the Report, and the Commissioner has responded to that objection.

**I.    Report and Recommendation Review Standard**

After reviewing a magistrate judge's report and recommendation, the Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in the report. Fed. R. Civ. P. 72(b). The Court must review *de novo* the portions of the report to which objections are made. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

In appeals of Social Security decisions, the Court will affirm the Commissioner's decision if it is supported by substantial evidence and contains no error of law. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Substantial evidence is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotations and citation omitted). When it decides whether substantial evidence supports a decision, the Court does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner. *Id.*

**II.     Background**

At the time of the ALJ's decision, Mandrell was a 44-year-old man with a high school education. His past work included jobs as a correctional officer, carpenter, arcade manager, security guard, cashier and sheriff's office dispatcher. In November 2001, while working as a correctional officer to subdue a prisoner, he was exposed to a self-defense chemical agent, which incapacitated him. Shortly thereafter, Mandrell developed breathing problems that caused, among other things, severe shortness of breath. He applied for social security benefits in 2003 alleging he was unable to work due to those breathing problems.

The claim made its way to an administrative law judge ("ALJ"), who conducted the five-step analysis applicable to the determination of whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The ALJ found that Mandrell had not been employed and had not engaged in substantial gainful activity since the onset of his alleged disability and that knee problems, respiratory problems and obesity constituted severe impairments, clearing the first two steps of the five-step inquiry. The ALJ further found that Mandrell's condition did not meet or equal any of the impairments listed in the relevant regulations, and moved on to the fourth step – assessing Mandrell's residual functional capacity ("RFC") to determine whether he could perform his past relevant work. The ALJ found that Mandrell could do sedentary work with an accommodation to allow him to receive a breathing treatment and with environmental restrictions (no *concentrated* exposure to temperature extremes, high humidity, cigarette smoke, perfumes,

2

odors, dusts, gases, chemicals, and areas of poor ventilation).  The ALJ further found that such an RFC would allow Mandrell to perform his past relevant work as a sheriff's dispatcher as well as a significant range of other sedentary jobs, even considering the necessary accommodation and environmental restrictions.  Consequently, the ALJ determined that Mandrell was not disabled and denied his application for Social Security benefits.

The Report finds that the ALJ did not err at the third step of the required inquiry by finding that Mandrell's impairments did not meet or equal a listed impairment.  The Report further found that the ALJ adequately explained why he rejected an opinion of Mandrell's treating physician and properly evaluated Mandrell's credibility.  Finally, the Report concluded that there was substantial evidence to show Mandrell could return to his past work as a sheriff's dispatcher and that work was available to Mandrell in the national economy.

In his objection, Mandrell faults the Report in several ways.  He argues that the Report erred (1) by setting forth an incomplete statement of facts, (2) in finding the ALJ's credibility determination was proper, (3) in finding the ALJ's rejection of Mandrell's treating physician's medical opinions was proper, (4) in finding the ALJ properly assessed Mandrell's RFC and (5) in accepting the Vocational Expert's opinion about the number of jobs in the national economy Mandrell could perform.  The Commissioner's response supports the Report and the ALJ's decision.  The Court will review the objected to portions of the Report *de novo*.

### III. Analysis

#### A. Plaintiff's Credibility

The main thrust of Mandrell's objection is that the ALJ erred in assessing his credibility, which in turn resulted in the ALJ's discounting of the medical opinion of Dr. Chirag Dave, Mandrell's primary treating pulmonary specialist, that Mandrell had certain functional

3

restrictions. This, Mandrell contends, resulted in an incorrect RFC finding.

The Court affords a hearing officer's credibility determination special deference because they are in the best position to see and hear the witnesses and to assess their forthrightness. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). The Court will reverse an ALJ's credibility determination only if the claimant shows it was "patently wrong." *Skarbek*, 390 F.3d at 505; *Powers*, 207 F.3d at 435. This rule holds true where the credibility determination rests on subjective factors like the plaintiff's subjective complaints of pain. However, where the credibility determination rests on "objective factors or fundamental implausibilities rather than subjective considerations," the Court has greater latitude to review an ALJ's decision. *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000). The ALJ must give specific reasons for finding a claimant's testimony not credible. *See* Soc. Sec. Ruling 96-7p.

In this case, the ALJ found that Mandrell's statements about his functional capacity were exaggerated and not credible. He based this in part on Mandrell's documented 90% relief from pain in his rib area and his failure to treat pain he claimed to have in his knee and shoulder, and his adequate treatment for depression through medication without need for other mental health treatment. The ALJ also noted that Mandrell was able to perform a number activities, including walking 100 yards at a time, walking for 35 to 40 minutes a day, watching movies in his home, driving his children to school every day, driving 35 minutes to the hearing, chewing tobacco, hunting deer with a gun, reading magazines, using a computer, campaigning for political office, camping, playing basketball with his son, cooking, shopping at Wal-Mart with some precautions, mowing the lawn with a mask and with frequent breaks and cutting fiberboard. He also noted Mandrell was able to see, hear, bend, stoop, squat, perform fine finger movements, grip and lift

50 to 75 pounds, but required four breathing treatments per day. He further noted that Mandrell had no problems interacting with strangers, although he did not like crowds because of the lack of control of environmental factors such as perfumes that could trigger breathing problems, and avoided exposure to chemicals and cleaners. The ALJ also noted Mandrell's alleged inconsistent reports to Dr. Stopford about his residual functional capacity (e.g., that he was a recluse) compared to his testimony before the ALJ and the record in its entirety. The ALJ found Mandrell's activities contradicted Mandrell's position that his impairments prevented him from doing even sedentary work unless there were *strict*, as opposed to just some, environmental restrictions.

This Court has some latitude in reviewing the ALJ's credibility determination because it was not based primarily on Mandrell's demeanor while testifying but on perceived discrepancies between Mandrell's actual activities and the purported limiting effects of his impairments. After careful review of the evidentiary basis for those discrepancies, finds that the ALJ made serious errors of fact or judgment. For example, the ALJ found that Mandrell could camp and cut fiberboard. However, medical evidence shows that those activities were not medically tolerated and resulted in trips to the emergency room for breathing problems.

As for walking, although Mandrell tries to walk every day, he is unable to walk during extreme temperatures and humidity because of difficulties breathing. As for deer hunting, Mandrell testified that he was only able to hunt sitting still on the ground, which does not reflect any degree of substantial exertion or exposure to an uncontrolled, unpredictable environment. Furthermore, the ALJ overstated Mandrell's activities when he said he "played" basketball with his son. His testimony was that he shot baskets, which requires a vastly different level of exertion than actually playing basketball, which involves guarding the opponent, jumping,

5

running and chasing loose balls.

As for cooking, Mandrell stated he was able to cook using a crock pot and few spices, which is a very limited culinary repertoire and is completely consistent with only being able to perform activities in a strictly regulated environment. As for Mandrell's ability to interact with strangers, his medically supported breathing restrictions are consistent with his inability to have contact with people who smell like perfumes, chemicals, cleaning agents, or other strong odors. The fact that he may be able to visit Wal-Mart's hunting department on occasion by no means indicates that he is able to have regular contact with a variety of customers for extended periods of time. In fact, Mandrell stated he has trouble in the laundry section of grocery stores because of the strong smells and cannot visit shopping malls because of the smells of candles or other triggering odors.

The ALJ further found that Mandrell could bend, stoop and squat, but the ALJ ignored Mandrell's testimony that he had trouble breathing when he bends over and when he sits up straight for extended periods. The ALJ also perceived an inconsistency in Mandrell's report to Dr. Stopford that he was a "recluse," but the testimony before the ALJ also reflected that at the time Mandrell restricted the majority of his activities, with the exception of his daily walks and hunting outings when they are possible, to his air-conditioned home and car where he could better ensure strict environmental controls. There is no inconsistency in these positions.

The Court further notes that Dr. Peter G. Tuteur, a treating pulmonary specialist, was adamant that Mandrell was able to perform sedentary activities so long as he *avoided exposure to irritants*. Dr. Tuteur did not qualify his restrictions to only *concentrated* exposure to irritants, the restriction found by the ALJ. In fact, Dr. Tuteur noted that it was not unusual for an individual's work area to be tolerable but for other areas that the individual would have to pass

6

through even for brief periods, such as, for example, a restroom, a cafeteria or a parking lot, to contain sufficient irritants to make the workplace unacceptable. Mandrell's activities reflect the difficulty in locating an acceptable environment, and his testimony about that difficulty is not inconsistent with Dr. Tuteur's medical assessment or his own longitudinal medical record.

Furthermore, the ALJ drew inferences about Mandrell's credibility based on his failure to treat his pain and depression without considering possible explanations for such failures. Such consideration is required by Social Security Rule 96-7p, and without such an inquiry, an ALJ cannot draw inferences about a claimant's credibility.

In sum, the Court finds that there was not substantial evidence to support the ALJ's determination that Mandrell was exaggerating about his functional restrictions.

B. Rejection of Treating Physician Opinion

Mandrell also faults the ALJ with failing to give the medical opinion of Dr. Dave controlling weight. The ALJ considered the functional opinions of Dr. Dave, Mandrell's primary treating pulmonary specialist, and gave it only modest weight because he found the restrictions were not supported by the record as a whole or Dr. Dave's progress notes for Mandrell.

A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *see* 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d). A treating physician's medical opinion can be discounted if it is inconsistent with a consulting physician's opinion or if it is internally inconsistent, but the reason for rejecting the opinion must be at least minimally articulated. *Id.*

In Dr. Dave's opinion, Mandrell was capable of performing a low stress job and could sit

for more than 2 hours before needing to get up, but could only stand for 30 minutes at a time and was restricted to less than 2 hours of sitting, walking or standing in an 8-hour workday. He also stated that lifting and postural restrictions and strict environmental restrictions were necessary. He also noted that Mandrell would need to take breaks to take a breathing treatment and would need to lie down.

The ALJ noted that Dr. Dave's treatment notes reflect no limitations on walking, standing, postural, or concentration activities. He also notes that Dr. Dave's environmental restrictions are inconsistent with Mandrell's activities as reported to his physicians and to the ALJ, and that no medical record supports concentration and attention problems or the need to lie down

The ALJ's decision not to give Dr. Dave's opinion controlling weight is supportable, in part, and unsupportable in others. The ALJ is correct that some of the restrictions are not supported by the medical findings and are inconsistent with substantial evidence in the record. For example, while the medical records support restrictions generally on exertion levels because exertion could trigger Mandrell's breathing problems, nothing supports the specific restrictions imposed by Dr. Dave. Furthermore, Dr. Dave's restrictions are internally inconsistent in some respects. For example, he states that Mandrell can sit for more than two hours at a time but then states that Mandrell could only sit, walk or stand for less than two hours during an eight-hour work day. Thus, those restrictions are not entitled to controlling weight, and the ALJ was right to give them only modest weight.

Dr. Dave's environmental restrictions, however, are supported by his as well as Dr. Tuteur's earlier medical findings that Mandrell must avoid exposure to airborne antigens and Mandrell's experience as reflected by substantial evidence in the record showing negative

8

reactions to airborne irritants and exertion. Dr. Dave's finding that Mandrell must be allowed breaks for necessary breathing treatments are borne out by numerous prescriptions in Mandrell's medical records for such treatments and Mandrell's testimony before the ALJ that he requires four treatments per day, each requiring an hour and fifteen minutes. Thus, Dr. Dave's assessment of Mandrell's environmental restrictions and of his need for breathing treatment breaks is consistent with the record, is internally consistent and should therefore have been given controlling weight.

In light of the foregoing findings, which by themselves justify reversal and remand, consideration of Mandrell's other arguments at this time is unnecessary.

**IV.     Conclusion**

For the foregoing reasons, the Court **REJECTS** the Report (Doc. 31), **REVERSES** the Commissioner's final decision denying Mandrell's application for Social Security Disability Insurance and Supplemental Security Income, and **REMANDS** this matter to the Commissioner pursuant to sentence 4 of 42 U.S.C. § 405(g) for further proceedings and a new decision consistent with this order. Specifically, the Commissioner should reevaluate Mandrell's credibility, give appropriate weight to the medical opinions of Mandrell's treating physicians, and revisit steps four and five of the five-step inquiry. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:  December 11, 2007**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
